IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WILLIAM K. DOWDY,**<br><br>           **Plaintiff,**<br><br>v.<br><br>**UNITED SEATING AND MOBILITY, LLC d/b/a NUMOTION, and PRIDE MOBILITY PRODUCTS CORPORATION,**<br><br>           **Defendants.** | **Case No. 23-cv-2875-SPM** |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Dismiss Counts I and IV of Plaintiff's First Amended Complaint ("FAC") filed by Defendant United Seating and Mobility, LLC d/b/a Numotion ("Numotion") (Doc. 31). For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the Motion to Dismiss.

### PROCEDURAL AND FACTUAL BACKGROUND

This action is based on an incident that occurred on October 17, 2022 in which Dowdy was injured in a fall from a temporary wheelchair while on his wheelchair ramp.

On August 18, 2023, a notice of removal was filed in this court pursuant to the provisions of 28 U.S.C. § 1441 and § 1446, asserting that this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 (Doc. 1). This action originated in Madison

County, Illinois on July 14, 2023 when Dowdy filed his initial complaint against defendants Numotion and Pride Mobility Products Corporation ("Pride") (Doc. 1-2).

On September 7, 2023, Pride answered the complaint (Doc. 14). On September 25, 2023, Numotion filed its answer and also filed a motion to dismiss counts I and IV (Docs. 25, 26). In lieu of responding to the motion to dismiss, Dowdy was granted leave to amend the complaint (Doc. 27).

On October 16, 2023, Dowdy filed the FAC, alleging the following counts:

- Count I – Strict Liability against Numotion;
- Count II – Negligence against Numotion;
- Count III – Warranty of Merchantability against Numotion;
- Count IV – Warranty of Fitness against Numotion;
- Count V – Strict Liability against Pride; and,
- Count VI – Negligence against Pride.

The allegations contained within the FAC arose out of the use of a temporary self-propelled wheelchair, which was manufactured by Pride and provided to Dowdy by Numotion to use while his regular wheelchair was being serviced and repaired (Doc. 29).

Within the FAC, Dowdy asserted that the temporary wheelchair was "defective and unreasonably dangerous" when it left the possession and control of both Pride and Numotion (*Id.*). In an attempt to correct the purported deficiencies of the complaint, Dowdy further alleged that Numotion had "actual knowledge of the defect(s)" and "created the defect(s)" which caused his injuries and damages (*Id.*, p. 3, ¶¶ 8,9)). Dowdy also alleged that Numotion "was aware" or "should have been aware" that he had a

"specific" wheelchair ramp at his residence and that he would use the temporary wheelchair for the particular purpose of going up and down his specific and unique ramp (*Id.*, p. 11, ¶ 7). Moreover, Dowdy contended that he relied upon Numotion to select and furnish a "suitable wheelchair" for said purpose (*Id.*, p. 11, ¶ 7, 9).

On November 6, 2023, Numotion filed its answer to the FAC along with a motion to dismiss counts I and IV for failure to state claims of strict liability and implied warranty of fitness (Docs. 31, 32). As to Count I, Numotion argued for dismissal under Illinois' "Innocent Seller" statute, 735 ILCS 5/2-621, because Dowdy did not properly plead any exception to the product liability statute (Doc. 31). Numotion further asserted that Count IV should be dismissed because Dowdy did not identify any "particular purpose" for which the temporary wheelchair was going to be used, as required under Illinois law (*Id.*).

On November 7, 2023, Pride filed its answer and affirmative defenses to the FAC, addressing counts V and VI which are directed against it (Doc. 34). As such, Pride is not involved in this matter regarding counts I and IV.

On November 29, 2023, Dowdy filed his response in opposition to the motion to dismiss (Doc. 37). With respect to Count I, Dowdy contended that he had complied with pleading requirements and properly alleged exceptions to the "Innocent Seller" statute (*Id*). With respect to Count IV, Dowdy asserted that Numotion impliedly warranted that the temporary wheelchair was safe for use on his particular ramp (*Id.*, p. 4).

Any reply should have been received before December 14, 2023; as such, this matter is ripe.

**LEGAL STANDARD**

This Court is mindful that this case was removed from Illinois state court on August 18, 2023 on the basis of diversity jurisdiction. Because federal courts sitting in diversity apply state substantive law and federal procedural rules, Illinois law applies. See *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817 (1938).

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp.v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "[I]t is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

## ANALYSIS

### I. Count I - Strict Liability

#### A. Law

In general, Illinois law applies strict liability to "all entities in the distributive chain of a defective product." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 745 (7th Cir. 2007) (quotations omitted). To establish a strict liability claim under Illinois law, a plaintiff must demonstrate: (1) that an injury resulted from a condition in the product; (2) the condition of the product was unreasonably dangerous; and (3) the condition existed at the time the product left the manufacturers control. *Lexington Ins. Co. v. Office Depot, Inc.*, 943 F. Supp. 2d 844, 848 (N.D. Ill. 2013) citing *Saieva v. Budget Rent-A-Car of Rockford,* 591 N.E.2d 507, 515 (Ill. App. Ct. 2013). Notwithstanding the foregoing, the Illinois legislature enacted an exception to this broad imposition of strict liability in 1979, which is now known as the "Seller's Exception"[1] 735 ILCS 5/2-621, and which allows the Court to dismiss a nonmanufacturer defendant from a strict liability product claim if certain criteria are established. See *Brobbey v. Enterprise Leasing Company of Chicago, et al.*, 935 N.E.2d 1084, 1092 (Ill. App. Ct. 2010).

Indeed, the seller's exception portion of the statute states as follows:

> "(c) A court shall not enter a dismissal order relative to any certifying defendant or defendants other than the manufacturer even though full compliance with subsection (a) of this Section has been made where the plaintiff can show one or more of the following:
>
>> (1) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the

---

[1] The Seller's Exception is often referred to as the "Innocent Seller" statute. *Lewis v. Johnson & Johnson, et al.*, 2015 WL 5121417 (S.D. Ill., Aug. 31, 2015).

> alleged defect in the product which caused the injury, death or damage; or
>
> (2) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or
>
> (3) That the defendant created the defect in the product which caused the injury, death or damage."

735 ILL. STAT. COMP. 5/2-§621(c) (eff. 1995).

**B. Discussion**

Here, Numotion provided an affidavit for purposes of the Seller's Exception identifying that Pride has been named as a defendant in this action (Doc. 31-1). Accordingly, dismissal is appropriate unless Dowdy can demonstrate that one of the exceptions of § 621(c) applies. In other words, to avert dismissal of a defendant otherwise eligible for dismissal, the plaintiff must show the defendant had actual knowledge of the unreasonably dangerous nature of the physical characteristics/design of the product, not just actual knowledge that the physical characteristics/design existed, in order to avoid dismissal of that defendant, *Murphy v. Mancari's Chrysler Plymouth, Inc.,* 887 N.E.2d 569, 576 (Ill. App. Ct. 2008), or must show that the defendant "exercised some significant control over the design or manufacture of the product or had actual knowledge of, or created, the defect." *Logan v. West Coast Cycle Supply Co.,* 553 N.E.2d 1139, 1143 (Ill. App. Ct. 1990).

In the response to Numotion's motion, Dowdy referenced certain allegations within the FAC that stated that Numotion "had actual knowledge of the defect(s)" and "created the defect(s)". *See, e.g.*, Doc. 37, p.2, which references Doc. 29, ¶¶ 8, 9. Numotion pointed to its own affidavit to support dismissal, but the affidavit does not

Page 6 of 9

rebut any actual knowledge of a defect nor does it deny that it created any such defect (See Doc. 31-1). While Numotion may be able to ultimately prevail in its position, this is a factual argument which must be resolved at a later stage in this action. At this time, the allegations in the FAC are facially sufficient to prevent dismissal pursuant to the Seller's Exception. As such, Numotions motion to dismiss count I is denied.

This Court also notes that the purpose of the "Seller's Exception" is to allow a defendant whose *sole* liability results from its role as a member in the chain of distribution of an allegedly defective product, who has not been shown to have created or contributed to the alleged defect or had knowledge of the defect, to get out of a product liability action at an early stage in order to avoid expensive litigation and to defer liability upstream to the manufacturer, the ultimate wrongdoer. *Kellerman v. Crowe,* 518 N.E.2d 116, 117 (Ill. 1987) *(emphasis added).* In this case, Numotion did not seek dismissal of count II and/or III of the FAC, so neither potential liability nor litigation expenses would be extinguished were this motion to be granted.

## II. Count IV - Implied Warranty of Fitness

### A. Law

The Uniform Commercial Code as codified in Illinois provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose." 810 ILCS 5/2-315. For a breach of the implied warranty of fitness for a particular purpose claim to survive a motion to dismiss, the plaintiff must allege: "(1) a sale of goods, (2) that the seller had reason to know of any particular purpose for

which the goods are required, (3) that plaintiff, as buyer of the goods, was relying upon seller's skills or judgment to select suitable goods, and (4) that the goods were not fit for the particular purpose for which they were used." *Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 666 (Ill. App. Ct. 2003). Moreover, as the comments to the statute make clear, "[a] 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business." 810 ILCS 5/2-315, cmt.n.2; *see also Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 746 (N.D. Ill. 1999) ("For such a warranty to exist, the goods must be for a purpose other than their ordinary use."). Thus, allegations that a manufacturer knew that a product would be put to its ordinary use by the injured party—as opposed to another particular purpose—will not suffice to state a claim for breach of the implied warranty of fitness for a particular purpose.

### B. Discussion

The Court agrees with Numotion. "No warranty for a particular purpose is created if the intended use is no different from the ordinary use of the product. A particular purpose differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purpose for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Ali v. Volkswagen Grp. of Am., Inc.*, 559 F. Supp. 3d 723, 735-36 (N.D. Ill. 2021) (internal citations and quotations omitted). A wheelchair's ordinary purpose involves navigating wheelchair ramps. While Dowdy oft alleged that his ramp is "particular", he does not identify any unique features and/or characteristics of said

ramp. Indeed, Dowdy did not provide any details about the slope or the length of the ramp, other than referring to it as "specific"(Doc. 29).

In his response, Dowdy contended that the temporary wheelchair was impliedly warranted by Numotion for use on his specific wheelchair ramp, but again, he failed to specify how and why his ramp was particularized. Accordingly, Numotion's motion to dismiss Count IV of the FAC is granted, and Dowdy's claim for breach of implied warranty of fitness for a particular purpose is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's Motion to Dismiss with respect to COUNT I and **GRANTS** the Motion with respect to Count IV. As such, Numotion is **ORDERED** to answer count I within fourteen days, or by January 22, 2024.

**IT IS SO ORDERED.**

**DATED: January 8, 2024**

s/ Stephen P. McGlynn<br>**STEPHEN P. McGLYNN**<br>**U.S. District Judge**