IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM K. DOWDY,

        Plaintiff,

v.                                                              Case No. 23-CV-02875-SPM

UNITED SEATING AND MOBILITY,
LLC, d/b/a NUMOTION,

        Defendant.

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter is before the Court on a Motion to Strike filed by Defendant United Seating and Mobility, LLC d/b/a NuMotion ("NuMotion"). (Doc. 81). Having been fully informed of the issues presented, Plaintiff's Motion is **DENIED**.

### RELEVANT FACUTAL AND PROCEDURAL BACKGROUND

This case arises from an incident in which Plaintiff William Dowdy was injured after falling from a temporary wheelchair while using his wheelchair ramp. (Doc. 1, Ex. A). The temporary wheelchair had been supplied by NuMotion while Dowdy's regular wheelchair was being serviced and repaired. (*Id.*, Ex. A, ¶ 6).

On July 13, 2023, Dowdy filed a Complaint in Illinois state court alleging that NuMotion provided him with a defective wheelchair and was therefore responsible for his injuries. (*Id.*, Ex. A). NuMotion removed the action to federal court based on diversity jurisdiction. (Doc. 1). After several amendments and motions to dismiss, the Court permitted Dowdy to proceed on three claims against NuMotion: (1) strict liability, (2) negligence, and (3) breach of the warranty of merchantability. (Docs. 26,

29, 31, 42, 49, 56, 59). Discovery has concluded, and with no summary judgment motions filed, the case is now proceeding to trial.

In advance of trial, NuMotion filed the present Motion to Strike under Federal Rule of Evidence 702, challenging the admissibility of Plaintiff's expert Mark Erza. (Doc. 81). Plaintiff filed a Response (Doc. 89), and the time for filing a Reply has passed; accordingly, the matter is ripe for review.

## LEGAL STANDARD

To begin, "[a] district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)." *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014); *see also Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The standard applies to all expert testimony, whether based on scientific competence or other specialized or technical expertise. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.137, 141 (1999)).

Federal Rule of Evidence 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or training or education may testify thereto in the form of an opinion or otherwise.

"In short, the rule requires that the trial judge ensure that any and all expert testimony or evidence admitted 'is not only relevant, but reliable.'" *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) (quoting *Daubert*, 509 U.S. at 589). In determining whether expert testimony is both relevant and reliable, courts in the

Seventh Circuit perform a three-step analysis: "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education,' FED. R. EVID. 702; the expert's reasoning or methodology underlying the testimony must be scientifically reliable, *Daubert*, 509 U.S. at 592–93; and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (citing FED. R. EVID. 702).

"[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). "A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id.* (quoting *Daubert*, 509 U.S. at 596). The district court possesses "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007)). Lastly, the "proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the Daubert standard" by a preponderance of the evidence." *Lewis*, 561 F.3d. at 705.

## DISCUSSION

NuMotion seeks to exclude the testimony of Plaintiff's expert Mark Ezra, arguing that he lacks the proper qualifications, that his opinions rest on speculation rather than reliable methodology, and that his testimony will not assist the jury. (Doc. 81). Plaintiff responds that Ezra is a seasoned mechanical engineer who applied established engineering principles to the facts of this case, and that NuMotion's objections go to weight, not admissibility. (Doc. 89). After reviewing the parties' submissions and the record, the Court concludes that Ezra's testimony satisfies Rule 702.

The Court begins with Ezra's qualifications. NuMotion emphasizes that Ezra is not a biomechanical engineer, has never worked for a wheelchair supplier, and has no experience as an Assistive Technology Professional ("ATP"). (Doc. 81, ¶¶ 11–14, 20, 33–35). But Rule 702 does not require an expert to hold a particular subspecialty certification or to have worked in the defendant's industry. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). The question is whether the witness possesses "knowledge, skill, experience, training, or education" that will assist the trier of fact. FED. R. EVID. 702. Ezra is a board-certified professional engineer with a degree in mechanical engineering and a diploma in automatic control systems. (Doc. 89, Ex. B, pp. 37–38). His professional background includes decades of engineering practice, mechanical failure analysis, and forensic investigation. (*Id.*). Mechanical engineering is directly relevant to the design, stability, braking systems, and mechanical behavior of powered wheelchairs—the very issues at the heart of this case. This Court

therefore finds that Plaintiff has shown by a preponderance of the evidence that Ezra is qualified to offer expert testimony.

The Court next considers reliability. NuMotion argues that Ezra's opinions lack a factual foundation, that he improperly relies on the testimony of ATP Vincent Fels, and that he cannot identify the precise electrical defect that caused the wheelchair to stop. (Doc. 81, ¶¶ 15–23, 36–39, 44–46). The Court finds these arguments unpersuasive.

Ezra's expert report reflects a systematic engineering analysis grounded in physical inspection, measurements, documentary review, and application of mechanical principles. He personally inspected the TSS 300 wheelchair, took custody of it, and measured the slope of Plaintiff's ramp. (Doc. 89, Ex. B, pp. 3–5). He reviewed the owner's manuals for both the TSS 300 and the Jazzy 600, analyzed their braking systems, and compared their wheel configurations and stability characteristics. (*Id.*, Ex. B., pp. 7–15). He considered Plaintiff's prior successful use of both wheelchairs on the same ramp and applied simple Newtonian mechanics to explain how a sudden stop would eject a seated user. (*Id.*, Ex. B., pp. 8–11, 13–14). Based on this analysis, Ezra concluded that the "most probable and direct cause" of the incident was a power failure in the TSS 300's electrical system, which triggered the automatic deployment of the parking brakes. (*Id.*, Ex. B., pp. 18–19). He further explained why regenerative braking could not account for the abrupt stop described by Plaintiff. (*Id.*, Ex. B., p. 18).

This methodology of identifying possible mechanical causes, ruling out alternatives, and applying engineering principles to the physical evidence is

consistent with accepted practices in mechanical failure analysis. The fact that Ezra cannot identify the specific electrical component that failed does not render his opinion unreliable. Experts are not required to pinpoint the exact microscopic failure mechanism where the available evidence supports a broader, scientifically grounded conclusion. *See Lapsley*, 689 F.3d at 815. Ezra's reasoning is transparent, testable, and rooted in the materials he reviewed.

NuMotion also contends that Ezra improperly relied on ATP Fels's testimony to opine on warnings and training. (Doc. 81, ¶¶ 15–17). But Ezra's core opinions concern mechanical behavior like stability, braking forces, and the consequences of a sudden stop, not ATP standards of care. The Court concludes that his references to Fels's testimony serve only to contextualize the absence of instruction and the differences between the two wheelchairs, not to substitute himself for an ATP. (Doc. 89, Ex. B, pp. 14–16). To the extent NuMotion believes Ezra strays beyond his expertise, that concern is best addressed through cross-examination, not exclusion.

Finally, the Court considers relevance. NuMotion argues that Ezra's testimony will not assist the jury because he cannot say whether NuMotion caused the defect or could have prevented it. (Doc. 81, ¶¶ 29–32, 36–37, 46). But Rule 702 does not require an expert to resolve every element of liability. Ezra's testimony will help the jury understand the mechanical forces at play, the behavior of the TSS 300 during braking, the significance of the design differences between the TSS 300 and the Jazzy 600, and the mechanical plausibility of Plaintiff's account. These matters are well outside the knowledge of a lay juror. Whether NuMotion caused the defect is a

separate question for the jury, informed by, but not dependent on, Ezra's mechanical analysis.

In short, NuMotion's objections challenge the strength of Ezra's conclusions, not the admissibility of his methods. Under *Daubert*, such challenges are properly addressed through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," not exclusion. 509 U.S. at 596. The Court therefore concludes that Ezra's testimony is admissible under Rule 702.

### CONCLUSION

For the reasons set forth above, the Court holds that the NuMotion's objections to Plaintiff's expert implicate the weight, not the admissibility, of their testimony. Accordingly, NuMotion's Motion to Strike (Doc. 81) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: April 1, 2026**

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**